859 P.2d 789

STATE of Arizona, Appellee,

v.

John Jennings FOY, III, Appellant.

No. 1 CA–CR 92–0891.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 16, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Cr. Appeals Section, and Colleen L. French, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

* The Honorable Steven D. Sheldon, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 3 of the Arizona Constitution.

OPINION

STEVEN D. SHELDON, Superior Court Judge.*

We hold in this opinion that restitution for the full economic loss to the victim under Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–603(C) (1989 & Supp.1992) does not include payment of interest on restitution amounts ordered by the trial judge as a condition of probation.

John Jennings Foy, III, ("defendant") challenges both the trial court's imposition of post-judgment interest on restitution awarded to the victims and the court's jurisdiction to enter such an order twelve days after sentencing. We affirm in part, reverse in part, and strike the awarding of interest for the reasons stated below.

On October 9, 1991, a grand jury indicted defendant on two counts of theft, class three felonies, in connection with the sale of gold and silver coins entrusted to his business. Defendant pled guilty to one count of theft, a class three felony, and agreed to pay restitution to the victim in Count I in an amount not to exceed $20,000 and to the victim in Count II in an amount not to exceed $6090.

The trial court conducted a restitution hearing on the amount owed to the victim in Count I. At sentencing on May 6, 1992, the trial court placed defendant on five years' probation. Included in the conditions of probation was a requirement that he pay restitution of $8710 to the victim in Count I and $5705 to the victim in Count II.

During the sentencing hearing, the trial judge questioned whether a defendant could be required to pay interest on the restitution ordered by the court. He stated:

I frankly agree [ ] that interest is something that can properly be covered by a restitution order, but I really think that the percentage and the method of calculation should be proved, and since we

don't have any proof along those lines, I am not making any special order with respect to interest, even though I think it could properly be charged.

After sentencing, the State filed a motion for reconsideration of the interest issue and, over the objections of defendant, the trial court granted the motion. In a May 19, 1992, minute entry, the judge ordered defendant to pay ten percent interest per annum on the restitution amount commencing May 6, 1992, and modified defendant's probation accordingly. The judge reasoned:

By way of explanation, the original order denying interest related only to what the Court believed to be [the victim's] request for interest dating from July 11, 1989 (date of conversion). The Court concluded that there was not a sufficient basis for including interest commencing that date in the order of restitution. However, given the language of A.R.S. Sections 13–804, 13–105(11), and 44–1201, it would appear that, as a matter of law, [the victim] is entitled to interest at the rate of 10% per annum commencing May 6, 1992.

Defendant appeals his sentence on the grounds that the trial court lost jurisdiction to modify his sentence after formal pronouncement of the sentence on May 6, 1992; that A.R.S. section 13–105(11) (1989) includes only actual "interest" losses by a victim prior to sentencing, and not postjudgment interest; and that A.R.S. section 44–1201 (Supp.1992) does not apply to criminal penalties.

**1. Jurisdiction to modify sentence**[1]

■ The threshold question is whether the trial court retained jurisdiction to modify the award of restitution after sentence was imposed on May 6, 1992. Our resolution of this issue is guided by reference to the statutory scheme implementing probation, which is, after all, "a matter of legis-

lative grace." *State v. Jenson*, 123 Ariz. 72, 74, 597 P.2d 554, 556 (App.1979).

The "authorized" disposition of defendants convicted of a crime is set out in A.R.S. section 13–603. Subsection (B) states in part:

[T]he court, if authorized ..., may suspend the imposition or execution of sentence and grant such person a period of probation.... The sentence *is tentative* to the extent that *it may be altered* or revoked in accordance with chapter 9 of this title....

(emphasis added). Subsection (C) directs the trial court, as a matter of law, to impose restitution "in the full amount of the economic loss."

In view of the legislature's express requirement that penal statutes be construed "according to the fair meaning of their terms to promote justice and effect the objects of the law," we think chapter nine permits a trial court to modify the amount of restitution as a condition of probation after a hearing with notice and an opportunity to be heard by the parties. In particular, section 13–901(C) (1989) provides, in part, that the court "may in its discretion ... modify or add to the conditions [of probation] ... at any time prior to the expiration or termination of the period of probation." A.R.S. section 13–805 (1989 & Supp.1992) also suggests that the court should retain jurisdiction to modify restitution until the defendant's sentence expires.

In a case similar to this one, the defendant claimed that the trial court's modification of his sentence, which increased restitution, was invalid because it increased the amount of restitution after formal pronouncement of sentence and occurred more than sixty days from the date of sentencing. *Harris v. State*, 200 Ga.App. 841, 410 S.E.2d 123, 124 (1991). The court interpreted the statutory requirements relating to

---

**1.** Although it does not appear that defendant was personally present at the modification of his sentence, he has not raised the issue and our disposition of the case makes it unnecessary to further consider the issue. *See State v. Powers*, 154 Ariz. 291, 295, 742 P.2d 792, 796 (1987)

(sentence vacated on ground sentence was not corrected in open court with defendant present, even though defendant did not appear to have raised issue); *State v. Lewus*, 170 Ariz. 412, 414, 825 P.2d 471, 473 (App.1992).

restitution broadly, concluding that the objects of the law were best effected by permitting the trial court to amend a restitution order during the period of probation. *Id.*

The defendant also argued the court's order increasing restitution was invalid because it increased his punishment after he had commenced serving his sentence. *Id.* The court rejected the defendant's argument that the increase in the amount of restitution awarded as a condition of probation was an *increase in punishment* and concluded that it was an increase in a nonpunitive aspect of probation directed towards a proper rehabilitative goal and to making the victim whole. *Id.* at 124–25. Finally, the court observed that the defendant was protected from an arbitrary increase in restitution because a hearing was required when the amount was contested. *Id.* at 125. Similar procedural safeguards are contained in our statutes. *See* A.R.S. §§ 13–603, 13–804 (1989 & Supp.1992).

We agree with the conclusion reached by the *Harris* court. The objectives of A.R.S. section 13–603(C) are best achieved when the "full amount of the economic loss" is repaid to the victims of crime. This objective, and its salutary, rehabilitative aspect, are also best achieved when a defendant on probation is required to pay that amount, even if it means a modification is required at a later date to reflect more accurately the victim's loss. For these reasons, we reject defendant's argument that the trial court was without jurisdiction to modify the amount of restitution.

## 2. Does "lost interest" include interest on a restitution award?

Whether a trial court may order payment of interest on restitution awards is a question of first impression in this State. It is a question of law to be resolved by interpreting statutes and applying common law principles generally limiting criminal penalties. A.R.S. section 13–603(C) requires that restitution be paid

> to the person who is the victim of the crime ... in the full amount of the economic loss as determined by the court

and in the manner as determined by the court ... pursuant to chapter 8 of this title.

A.R.S. section 13–105(11) defines "economic loss" as

> [a]ny loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

The issue squarely presented by this case is whether the phrase "lost interest," as used in section 13–105(11), includes the payment of interest on a restitution award that is made a condition of probation.

At common law, judgments did not bear interest; entitlement to interest rested solely upon statutory provisions. *Pierce v. United States*, 255 U.S. 398, 406, 41 S.Ct. 365, 368, 65 L.Ed. 697 (1921) (considering the issue of whether a trial court could require payment of interest on a criminal judgment). Moreover, other courts have recognized that criminal penalties generally do not bear interest and that "restitution" is a criminal penalty. *United States v. Rochester*, 898 F.2d 971, 983 (5th Cir.1990); *United States v. Sleight*, 808 F.2d 1012, 1020 (3d Cir.1987) (noting the general rule that a criminal penalty does not bear interest and that the denial of interest on criminal penalties "might well be rested on judicial unwillingness to expand punishment fixed for a criminal act beyond that which the plain language of the statute authorizes."). In *Sleight*, the court observed that while the purpose of restitution is to make the victim whole, it is imposed as a part of a criminal sentencing procedure and remains inherently a criminal penalty.

This general rule was a guiding principle in *State v. Akers*, 435 N.W.2d 332 (Iowa 1989). The trial court convicted defendant of stealing a truck and ordered him to pay restitution to the victim in the amount $3,436. *Id.* at 333. The court also ordered defendant to pay ten percent annual inter-

est on the restitution award. *Id.* Defendant appealed, arguing the trial court had no power to impose interest on the restitution award. He claimed interest was not included in the language of the restitution statute and that a reading of the statute showed that it intended to exclude interest on restitution awards. The state argued that the imposition of interest was consistent with the legislative purposes behind restitution to victims and that interest on restitution amounts was implicitly authorized by statute, referring to a civil judgment statute that provided for interest on judgments in general. *Id.* The state also argued that payment of interest was authorized pursuant to the sentencing court's broad statutory discretion regarding conditions of probation for convicted offenders. The court concluded that a sentencing court did not have the power to impose interest on restitution awards. *Id.*

In reaching this conclusion, the court reviewed the statutory scheme by examining legislative intent, the statutory language, the objectives sought to be accomplished, and the evils sought to be remedied. *Id.; Cf. State v. Iniguez,* 169 Ariz. 533, 536, 821 P.2d 194, 197 (1991) (in reviewing statutory scheme, the court must attempt to determine the legislative intent, review the statutory language, and examine the subject matter, effects, consequences, reason and spirit of the statute). The court concluded that the term "pecuniary damages" was narrowly defined and evidenced a legislative intent to exclude interest on judgments of restitution. 435 N.W.2d at 334; *see also People v. Engel,* 746 P.2d 60, 62–63 (Col. App.1987) (imposition of interest on restitution amount was not proper because interest was not "pecuniary damages" under the restitution statute); *State v. Dickenson,* 680 P.2d 1028, 1028–29 (Or.App.1984) (a court order to pay interest on restitution was not proper because interest was not "special damages" under restitution statute).

■ Our legislature has narrowed the definition of "economic loss," as that term is used in reference to restitution, in A.R.S. section 13–603(C). The definitional param-

eters selected by the legislature demonstrate an intelligent choice between competing interests. If the phrase "full amount of the economic loss" were defined broadly to permit the recovery of unliquidated damages, i.e. pain and suffering, punitive damages, decreased earning capacity, loss of consortium and the like, the criminal trial courts would be forced to make difficult and time-consuming evaluations of losses usually reserved for civil juries. Our courts have repeatedly recognized that the goals of restitution in a criminal case differ from damages imposed in a civil action. *See, e.g., State v. Pearce,* 156 Ariz. 287, 289, 751 P.2d 603, 605 (App. 1988); *State v. Whitney,* 151 Ariz. 113, 114, 726 P.2d 210, 211 (App.1985). Moreover, unlike a civil judgment debtor, a victim entitled to restitution is protected from a discharge of that obligation in bankruptcy court. *State v. West,* 173 Ariz. 602, 608, 845 P.2d 1097, 1103 (App.1992) (holding that a restitution order does not create a "debt" between the defendant and his victims but is part of the criminal judgment imposed by the State and, thus, is not affected by a prior bankruptcy discharge). The victim may also reasonably rely on the enforcement of restitution by the criminal courts through the use of probation revocation proceedings when appropriate. Finally, the legislature has provided for an extension of probation *only* when necessary to satisfy a restitution obligation. A.R.S. § 13–902(B) (1989).

■ In reviewing the statutory scheme as a whole, it can be seen that although the legislature intended to compensate victims of crime, it intended to do so for those economic losses incurred as a direct result of the commission of the offense and that would not have been incurred *"but for the offense."* It specifically excluded, for example, consequential damages. Consequential damages measure such damages as do not flow directly and immediately from the act but only from consequences or results of such acts. *Cf. State v. Wideman,* 165 Ariz. 364, 369, 798 P.2d 1373, 1378 (App.1990) (loss of travel expenses do not flow from the acts to which the defen-

dant pled guilty; therefore, they are consequential damages). Clearly, post-judgment interest on awards of restitution is not a "loss" that would not have been suffered "but for the offense."

 The context of the statute in which the phrase "lost interest" occurs suggests the legislature intended that interest losses, directly and predictably attributable to the defendant's conduct, which would not have occurred but for the conduct, are to be reimbursed. "Lost interest," therefore, includes interest amounts previously agreed upon between the victim(s) and defendant(s) or a third party to which the victim would have been entitled and would have received but for the defendant's criminal conduct.[2] It does not include interest imposed by the court on a restitution award in a criminal case.

### 3. Does A.R.S. section 44–1201 apply to criminal penalties?

In addition, we reject the State's argument, as did the court in *State v. Akers, supra,* that the general civil judgment statute A.R.S. section 44–1201, which provides for interest on judgments in general, authorized the imposition of interest in this case. No authority has been cited to show that the provisions of this civil statute, applicable to trade and commerce, may properly be applied to a criminal penalty.

The courts will not construe a statute as effecting any change in the common law beyond that which is clearly indicated; statutory enactments should be construed as consistent with the common law. *Jones v. Manhart,* 120 Ariz. 338, 340, 585 P.2d 1250, 1252 (App.1978). Further, if the common law is to be changed, supplemented, or abrogated by statute, it must be done expressly or by necessary implication. *Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). If the legislature does not clearly and plainly manifest an intent to alter the common law, the common law remains in effect. *Id; see also* A.R.S. § 1–201 (1989). Therefore, the general rule at common law that criminal penalties do not bear interest must prevail.

For the reasons set forth above, the portion of the court's order authorizing the payment of interest at ten percent per annum is vacated. In all other respects, the judgment and sentence are affirmed.

TOCI, P.J., and CLABORNE, J., concur.

2. An example of such a loss includes conversions of funds invested in certificates of deposits or notes accruing interest at a specific rate for a pre-determined period of time.